# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| **THE CINCINNATI INSURANCE CO.,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | CIVIL ACTION 99-0552-WS-C |
| ) | |
| **MATTHEW LEACH COCHRAN, et al.,** ) | |
| ) | |
| **Defendants.** ) | |

## ORDER

This matter is before the Court on the defendants' motion in limine regarding certain of the plaintiff's expert witnesses. (Doc. 308). The plaintiff has responded, (Doc. 309), and the motion is ripe for resolution. After carefully considering the foregoing materials and other relevant materials in the file, the Court concludes that the motion is due to be granted in part and denied in part.

## BACKGROUND

On the night of November 11, 1998, a fire damaged the premises of defendant Foreign Auto Parts of Mobile, Inc. ("Foreign Auto Parts"). Defendant Cochran, the business owner, acknowledges that he was in the building when the fire began but denies that he set it. A succession of individuals investigated the fire, with several concluding or supporting the conclusion that it was the result of arson. The plaintiff, which insured the premises, declined to pay and filed this declaratory action. The defendants counterclaimed, inter alia, for breach of contract and bad faith.

The present motion seeks to exclude the testimony of seven expert witnesses for the plaintiff. The primary ground is the plaintiff's asserted failure to satisfy the requirements of Federal Rule of Evidence 702, as amplified by *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), and like cases. The motion includes additional, isolated challenges based on Rules 401, 402 and 403.

**DISCUSSION**

The requirements for the admission of expert testimony in light of *Daubert* are well known and need not be regurgitated at length herein. "Expert testimony may be admitted into evidence if: (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*; and (3) the testimony assists the trier of fact, through the application of scientific, technical or specialized expertise, to understand the evidence or to determine a fact in issue." *City of Tuscaloosa v. Harcros Chemicals, Inc.*, 158 F.3d 548, 562 (11th Cir. 1998)(footnote omitted). There are thus three discrete inquiries: qualifications, relevance, and reliability.[1] The burden of establishing these three requisites lies with the proponent. *United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004)(en banc).[2]

An expert may be qualified "by knowledge, skill, experience, training, or education." Fed. R. Evid. 702. An expert is not necessarily unqualified simply because her experience does not precisely match the matter at hand. *See Maiz v. Virani*, 253 F.3d 641, 665 (11th Cir. 2001)(an economic expert was qualified even though he "ha[d] no real estate development experience and thus no basis to opine regarding how the pilfered funds would have been invested by the Plaintiffs").

To the requirement of Rule 401 that evidence possess a "tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable," Rule 702 adds that expert evidence must "assist the trier of fact to understand the evidence or to determine a fact in issue." The evidence must "concern matters that are beyond the understanding of the average lay person. ... Proffered expert testimony generally will not help the trier of fact when it offers nothing more than what lawyers for the parties can argue in closing arguments." *United States v. Frazier*, 387 F.3d at 1262-63. In addition, the expert evidence "must have a valid scientific connection to the

---

[1]*See Quiet Technology DC-8, Inc. v. Hurel-Dubois UK Ltd.*, 326 F.3d 1333, 1341 (11th Cir. 2003)(although there is "some overlap" among these inquiries, they "are distinct concepts that courts and litigants must take care not to conflate").

[2]Expert testimony must also satisfy other applicable rules of evidence, including Rules 401, 402 and 403. *Allison v. McGhan Medical Corp.*, 184 F.3d 1300, 1309 (11th Cir. 1999).

disputed facts in the case." *Allison v. McGhan Medical Corp.*, 184 F.3d 1300, 1312 (11th Cir. 1999). That is, there must be an adequate "fit" between the evidence and the case, which may be lacking, for example, when the expert attempts to extrapolate animal studies into the human sphere. *Rider v. Sandoz Pharmaceuticals Corp.*, 295 F.3d 1194, 1202 (11th Cir. 2002).

The most heavily litigated component of the *Daubert* analysis, in this case as generally, is reliability. Expert testimony "must be 'scientific,' meaning grounded in the methods and procedures of science, and must constitute 'knowledge,' meaning more than subjective belief or unsupported assumptions." *McDowell v. Brown*, 392 F.3d 1283, 1298 (11th Cir. 2004). Rule 702 identifies three components of the reliability element: "(1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case."

*Daubert* identifies several non-exclusive factors that a court may consider as appropriate in gauging the reliability of the principles and methods utilized by the expert: (1) whether the methodology has been, or is amenable to, testing; (2) whether it has been subjected to peer review and/or publication; (3) the known and potential error rate of the methodology; and (4) whether it has been generally accepted in the relevant scientific community. 509 U.S. at 593-94. "Notably, ... these factors do not exhaust the universe of considerations that may bear on the reliability of a given expert opinion, and a federal court should consider any additional factors that may advance its Rule 702 analysis." *Quiet Technology DC-8, Inc. v. Hurel-Dubois UK Ltd.*, 326 F.3d 1333, 1341 (11th Cir. 2003). Among such factors, "[i]n evaluating the reliability of an expert's method, ... a district court may properly consider whether the expert's methodology has been contrived to reach a particular result." *Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1293 n.7 (11th Cir. 2005).

Whatever factors are considered, the Court's focus should "be solely on principles and methodology, not the conclusions they generate." *Allison v. McGhan Medical Corp.*, 184 F.3d at 1312 (internal quotes omitted). It is therefore error to conflate admissibility with credibility, as by considering the relative weight of competing experts and their opinions. *Quiet Technology v. Hurel-Dubois*, 326 F.3d at 1341. Thus, for example, "a district court may not exclude an expert because it

believes the expert lacks personal credibility because of prior bad acts or other prior instances of untruthfulness." *Rink v. Cheminova*, 400 F.3d at 1293 n.7.

With respect to the third reliability criterion of Rule 702, errors in an expert's application of a reliable method generally implicate credibility rather than reliability. *See Quiet Technology v. Hurel-Dubois*, 326 F.3d at 1345-46 (using incorrect numbers in a reliable formula is not grounds for exclusion under *Daubert*).

Certain additional observations are worth making. "Presenting a summary of a proffered expert's testimony in the form of conclusory statements devoid of factual or analytical support is simply not enough [to carry the proponent's burden]." *Cook ex rel. Estate of Tessier v. Sheriff of Monroe County*, 402 F.3d 1092, 1113 (11th Cir. 2005). Similarly, "nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence which is connected to existing data only by the ipse dixit of the expert." *Id*. at 1111 (internal quotes omitted). An expert's unexplained assurance that her opinions rest on accepted principles fares no better. *McClain v. Metabolife International, Inc*., 401 F.3d 1233, 1222 (11th Cir. 2005).

Moreover, "[t]he *Daubert* requirement that the expert testify to scientific knowledge — conclusions supported by good grounds for every step in the analysis — means that *any* step that renders the analysis unreliable under the *Daubert* factors renders the expert's testimony inadmissible." *McClain v. Metabolife*, 401 F.3d at 1245 (emphasis in original)(internal quotes omitted); *accord Hudgens v. Bell Helicopters/Textron*, 328 F.3d 1329, 1344 (11th Cir. 2003) ("[A]n expert's failure to explain the basis for an important inference mandates exclusion of his or her opinion.").[3]

Neither side has requested a hearing. A trial court's decision whether to hold such a hearing is committed to its sound discretion, *Cook v. Sheriff of Monroe County*, 402 F.3d at 1113, and absent a request the Court concludes that no hearing is required. *Cf. id.* at 1108, 1114 (no abuse of discretion in failing to hold a hearing when not requested). Even when a hearing is requested, the court has discretion to deny the request, especially when the case is not a complicated one involving multiple

---

[3]Having set forth these governing principles, the Court will not repeat them each time one becomes applicable to a particular expert or argument advanced by the parties.

expert witnesses. *E.g., United States v. Hansen*, 262 F.3d 1217, 1234 (11th Cir. 2001). Although there are multiple expert witnesses in this case, their testimony is not — despite the best efforts of the parties to suggest otherwise — particularly complicated, especially compared with those cases involving dueling medical evidence as to which a hearing may be a fruitful exercise. *See id.* (trial court should grant a motion for hearing when the opponent presents conflicting medical literature and expert testimony).

**A. Harold Deese.**

Deese has been identified as an expert in fire cause and origin. (Doc. 297 at 33).

**1. Qualifications.**

The defendants identify no challenge to Deese's qualifications.

**2. Relevance.**

The defendants purport to question the relevance of Deese's testimony, (Doc. 308 at 1), but his opinions as to cause and origin are patently relevant for purposes of Rule 401 and *Daubert*.

**3. Reliability.**

The defendants first argue that Deese rushed to judgment by pronouncing it a "classic arson scene" after spending "only several hours there." (Doc. 308 at 1-2). They ignore the extensive investigation Deese conducted during this time and the information he possessed from Cochran and witness Pete Preston when he announced his opinion. (Doc. 48, Exhibit G).

The defendants next argue that Deese altered the scene by removing electrical evidence before Owen Posey, the plaintiff's electrical expert, arrived. (Doc. 308 at 2). Whether he did so is a disputed question of fact, but in any event the defendants — who claim that the fire started in a wire overlooked and left in place by both Deese and Posey — have not explained how Deese's removal of evidence that even they recognize as unrelated to cause and origin could possibly render his opinions (or those of

Posey) unreliable for purposes of *Daubert*. Whatever this allegation, if proved, may say about the quality of Deese's investigation and/or his predisposition to find arson, it does not so undermine the reliability of the investigation he did undertake as to render his conclusions as to cause and origin inadmissible under *Daubert*.

The defendants note that assistant fire marshal Wayne Dean had already reviewed the scene, found nothing suspicious, and released the scene to Cochran before Deese arrived. (Doc. 308 at 2-3). That another expert reached a contrary conclusion obviously cannot render Deese's opinion unreliable for purposes of *Daubert*, and this must be especially so when, as with Dean, the competing expert offers only the raw conclusion that he saw nothing suspicious.

Next, the defendants argue that Deese "altered the identified locations of the carpet samples ... to make it appear that there were two points of origin." (Doc. 308 at 3). It is plain that Deese has given conflicting statements as to the source of his samples,[4] but the defendants offer nothing save their ipse dixit that this is due to "misrepresentation." (*Id*.).[5] While the discrepancy allows the defendants to question Deese's credibility and the weight to be given his opinions, it does not show that those opinions are unreliable for purposes of *Daubert*.

The defendants also argue that Deese altered his recording of his interviews of Cochran and Preston. (Doc. 308 at 3). As set forth in the Court's order on the plaintiff's motion in limine, the defendants will be allowed to present expert testimony that there are holes in the recording that were likely made by erasing the original recording or recording over it. The expert will not, however, be allowed to testify as to his computer analysis or his resulting conclusion that Deese's recorder made the holes. Thus, the defendants are left with no significant evidence that Deese is responsible for any hole in

---

[4]In his report, Deese stated that the samples were taken from the two locations that he deemed the two points of origin: between the two desks and adjacent to the office entrance. (Doc. 48, Exhibit G at 6, 8, 18). In a diagram, in deposition, at trial and in his evidence transmittal form, he identified both samples as coming from the area of the desks. (Doc. 143, Exhibits B, C; Doc. 241, Exhibit 2; Doc. 308, Exhibit E).

[5]For aught that appears, Deese's statement in his report may have been an innocent mistake. That Deese has openly and repeatedly identified both samples as having come from the area of the desks suggests that the contrary statement in his report was unintentional.

the recordings. Moreover, they have made no suggestion that the holes are numerous or that they mask significant exculpatory information, and they have offered no evidence that the holes were purposefully made.

The defendants next argue that Deese altered the distance between two points within the building from 29 feet to 42 feet. (Doc. 308 at 3-4). By "alteration," the defendants mean that Deese recorded an incorrect figure, and that he did so with the purpose of making it less likely that medium petroleum distillate ("MPD") was tracked from the shop, where it was used, to the office, where it was found after the fire. The defendants cannot explain how this seemingly minor error precludes the admission of Deese's opinions as to cause and origin.

The defendants next complain that Deese was unable to produce during litigation his original photographs and negatives. (Doc. 308 at 4). They do not challenge the plaintiff's statement that Deese turned over these items to the district attorney's office, (Doc. 309 at 21), and they do not suggest how this practice impairs the reliability of his opinions.

Returning to a theme repeatedly pressed during this litigation, the defendants next assert that Deese has twice previously been suspected of altering a fire scene. (Doc. 308 at 5-8). The Court has already ruled that the jury may not hear this evidence, due to the defendants' failure to satisfy the requirements of Federal Rule of Evidence 404(b). (Docs. 276, 296). Even if that ruling does not preclude the Court from considering the same evidence on a motion in limine, a court cannot exclude expert testimony based on prior bad acts or untruthfulness of the expert. *Rink v. Cheminova*, 400 F.3d at 1293 n.7.

Next, the defendants assert that Deese declares fire scenes to be arson at a rate several times higher than the national average. (Doc. 308 at 7). As a threshold matter, the defendants have offered no evidence of any national average. (*Id*.; Doc. 91, ¶ 10). Nor have they explained how such a fact, if it exists, renders Deese's opinions unreliable for purposes of *Daubert*.

The defendants complain that Deese volunteered to the district attorney to perform a faulty experiment in an effort to discredit Cochran's theory of an electrical cause for the fire, which they cite as proof that Deese will say and do anything required in order to discredit Cochran. (Doc. 308 at 7).

As with other items discussed above, Deese's zeal does not establish that his opinions are unreliable for purposes of *Daubert*.

Finally, the defendants object that Larry Hansen took a debris sample from the "same area" as Deese, yet Hansen's sample tested negative for MPD. (Doc. 308 at 8). The testimony, however, is that Hansen's sample was taken from the area under the plastic desk mat, (Doc. 309, Exhibit 17), while Deese's sample, by the defendants' own insistence, was not.

### 4. Conclusion.

The defendants challenge Deese's reliability primarily on the theory that he was a hired gun willing to tamper with and manipulate evidence in order to reach a pre-conceived conclusion of arson regardless of the facts. While the Court may consider such matters on a *Daubert* challenge, the defendants have failed to establish the factual accuracy of most of their individual allegations and have failed to show that any of the questioned conduct was the result of a deliberate campaign to "get" Cochran dishonestly.[6] The defendants' motion in limine with respect to Harold Deese is **denied**.

## B. Owen Posey.

Posey has been identified as an expert in fire cause and origin relating to electrical sources. (Doc. 297 at 34).

### 1. Qualifications.

The defendants identify no challenge to Posey's qualifications.

### 2. Relevance.

The defendants purport to question the relevance of Posey's testimony, (Doc. 308 at 8), but his

---

[6]The defendants' failure to request a hearing precludes the Court from making credibility determinations on the disputed evidence, but it appears doubtful on this record that such a hearing could have rescued the defendants' strident but poorly supported briefing.

opinions as to cause and origin are patently relevant for purposes of Rule 401 and *Daubert*.

### 3. Reliability.

The defendants argue that Posey was primed to rule out an electrical cause before his investigation began because Deese had already told him it was arson. (Doc. 308 at 8). The defendants have not shown that it is unacceptable for one expert to receive another expert's opinion before forming his own.[7] Nor have they shown that Posey's opinions were affected by Deese's conclusion.

The defendants next argue that Posey's opinions are unreliable because Deese allegedly removed certain electrical evidence before Posey arrived. (Doc. 308 at 2). This argument fails for reasons explained in Part A.3.

The defendants next argue that Posey made multiple "misrepresentations" in connection with his investigation. (Doc. 308 at 9). Whether they are misrepresentations or even inaccuracies, however, depends on credibility determinations precluded by the defendants' failure to request a hearing. At any rate, the defendants have identified no statement could render Posey's opinions as to cause and origin unreliable for purposes of *Daubert*.[8]

The defendants next list a number of steps Posey did not take and items of information he did not obtain before reaching his conclusion that the fire's cause was not electrical. (Doc. 308 at 9-10). They fail, however, to explain the significance of these omissions, especially in light of Cochran's assurance that the fire began in a precise area of the office and coincided with his turning on a light switch. The plaintiff asserts, and the defendants do not contest, that Cochran's version of events

---

[7]"[W]hen an expert relies on the opinion of another, such reliance goes to the weight, not the admissibility of the expert's opinion." *Ferrara & DiMercurio v. St. Paul Mercury Insurance Co.*, 240 F.3d 1, 9 (1st Cir. 2001).

[8]As noted in text, the alleged misrepresentation that Posey (to the exclusion of Deese) removed electrical evidence concerns evidence the defendants concede is unrelated to the fire's cause and origin. The alleged misrepresentations that Posey had checked all the electrical equipment and investigated all electrical issues, and that the north outlet serviced nothing in the office, likewise relate to matters not alleged to be related to the fire's cause and origin. Describing as a misrepresentation Posey's conclusion that the fire was not electrical is simply a colorful way of disagreeing with that conclusion.

rendered most if not all of the allegedly omitted items irrelevant.

Finally, the defendants complain that Posey lost his entire file before being deposed (over four years after his investigation), (Doc. 308 at 9), but they have shown neither nefarious design nor prejudice to themselves.

### 4. Conclusion.

The defendants' motion in limine with respect to Owen Posey is **denied**.

## C. Larry Hansen.

Hansen, who began an investigation on November 17, 1998 in his capacity as assistant fire marshal, has been identified as an expert, apparently in fire investigation. (Doc. 236, Exhibit R at 341-44; Doc. 297 at 36-37).[9]

### 1. Qualifications.

The defendants identify no challenge to Hansen's qualifications.

### 2. Relevance.

The defendants purport to question the relevance of Hansen's testimony, (Doc. 308 at 11), but his opinions as to cause and origin are patently relevant for purposes of Rule 401 and *Daubert*.

The defendants also appear to argue that Hansen's opinions are irrelevant because, since the plaintiff did not learn of them until 2004, it did not rely on them in denying benefits. (Doc. 308 at 12). Regardless of whether Hansen's opinions are relevant to the defendants' bad faith claim, they are plainly relevant to whether the fire was in fact caused by arson, which the parties agree is an affirmative defense to the defendants' claim for breach of contract. (Doc. 307 at 2-3).

---

[9]The parties do not identify Hansen's expert opinions, although he will apparently testify that the cause of the fire was arson.

### 3. Reliability.

The defendants first complain that, by the time Hansen arrived, Dean had found nothing suspicious and released the scene. (Doc. 308 at 11). As discussed in Part A.3, mere disagreement with another witness does not rob an expert's opinions of reliability for purposes of *Daubert*.

The defendants also point out that Hansen arrived after Deese and/or Posey had removed electrical items. (Doc. 308 at 11). The defendants do not explain how the removal of electrical items precluded Hansen from forming reliable opinions based on his observations and other information, including analysis of debris samples. True, the removal precluded him from examining the electrical items for the purpose of ruling out an electrical cause, but Hansen relied on the work of Posey in eliminating such a cause. (Doc. 273, Exhibit J at 398).

The defendants next pounce on that reliance, on the theory that if the opinions of Deese and Posey are excluded as unreliable, Hansen's derivative opinions must also be excluded. (Doc. 308 at 11-12). Because, as discussed in Parts A and B, the opinions of Deese and Posey are not to be excluded under *Daubert*, neither can any portion of Hansen's opinions be excluded on this basis.

Finally, the defendants identify two pieces of evidence which they say Hansen, unlike Deese or Posey, interprets favorably to their case. (Doc. 308 at 12). Hansen's assistance is at best tepid,[10] but at any rate his provision of testimony favorable to the defendants would scarcely furnish grounds for its exclusion.

### 4. Unfair prejudice.

The defendants argue that it is unfairly prejudicial to allow law enforcement witnesses, including Hansen, to testify without allowing the defendants to offer evidence that the prosecution of Cochran was abandoned after allegations concerning Deese's conduct in previous investigations came to light.

---

[10]Hansen did recognize a low burn pattern in the area in which Cochran claims the fire began, but he testified that there were multiple low burn patterns which neither he nor Posey could associate with an electrical cause. Hansen testified that a particular pattern could be from heated, flowing plastic, but he also testified that the pattern could be a pour pattern from where an ignitable liquid was poured. (Doc. 236, Exhibit R at 367-68; Doc. 273, Exhibit K ).

The defendants argue that the presentation of such witnesses could encourage the jury to assume that Cochran "did something illegal," and that the defendants should be allowed to counter that impression by showing the ultimate fate of the prosecution. (Doc. 308 at 12-13).

On its face, the defendants' argument appears to be an effort to circumvent the Court's previous ruling that they may not present evidence of Deese's alleged past misconduct. (Docs. 276, 296). In any event, the defendants' previous motion to exclude the law enforcement witnesses, based on precisely the grounds now urged, was denied. (Doc. 273 at 7, ¶ 25; Doc. 274). As the Court has explained, (Doc. 302 at 3, ¶ 8), a prior ruling cannot be revisited simply because a different judge is now assigned to the case, and the defendants have offered no cognizable basis for entertaining what is effectively a motion to reconsider the earlier ruling. *See generally Mays v. United States Postal Service*, 122 F.3d 43, 46 (11th Cir. 1997)(emphasizing the limited circumstances in which motions to reconsider are appropriate).

### 5. Conclusion.

The defendants' motion in limine with respect to Larry Hansen is **denied**.

## D. Emmanuel Cook.

Cook, who responded to the scene in his capacity as a fire investigator for the city fire department, has been identified as an expert, apparently in fire investigation. (Doc. 297 at 35-36).[11]

### 1. Qualifications.

The defendants identify no challenge to Cook's qualifications.

### 2. Relevance.

---

[11] The parties do not identify Cook's expert opinions. The Court's review of Cook's affidavit and report reveals that he inspected the building, received information from witnesses and others, and took a debris sample for forensic analysis. His report reflects that he considered the cause of the fire "suspicious." (Doc. 236, Exhibit F).

-12-

The defendants purport to question the relevance of Cook's testimony, (Doc. 308 at 13), but his opinions are patently relevant for purposes of Rule 401 and *Daubert*. Cook's opinion that the fire was suspicious seems especially relevant, given the defendants' repeated insistence that the fire was not considered suspicious until Deese's arrival the next day.

### 3. Reliability.

The defendants object that Cook's only connection with the fire was immediately afterwards, that he did not complete an investigation but turned the scene over to Dean, and that he acknowledged at the time that he could not determine the cause of the fire. (Doc. 308 at 13). Had Cook opined that the fire was in fact the result of arson, the defendants' argument might carry more heft. But Cook has opined only that the fire was suspicious, suggesting that it was deserving of additional scrutiny, and the defendants have offered no support for the proposition that such a tentative opinion, based on what the expert has himself observed and learned in the hours after the fire, is unreliable.

The defendants also argue that there is no chain of custody or other foundation for the sample Cook took. (Doc. 308 at 13). Any such deficiency would affect only the sample and its analysis, not the reliability of Cook's expert testimony. At any rate, and as discussed in Part F.3, there is more than adequate evidence that the sample tested is the sample Cook took.

### 4. Conclusion.

The defendants' motion in limine with respect to Emmanuel Cook is **denied**.

## E. Laurel Waters.

Laurel Waters has been identified as an expert with respect to the presence of MPD in the samples she tested (her 1998 report) and the impossibility of the MPD being the result of tracking from footwear (her 2004 report). (Doc. 241, Exhibit 2; Doc. 297 at 34).

### 1. Qualifications.

The defendants identify no challenge to Waters' qualifications.

### 2. Relevance.

The defendants purport to question the relevance of Waters' testimony, (Doc. 308 at 14), but her opinions as to the presence of MPD in the samples she tested, and as to the likelihood that the MPD was the result of tracking by footwear, are patently relevant for purposes of Rule 401 and *Daubert*.

### 3. Reliability.

In an apparent effort to suggest bias, the defendants note that Waters is a member of the same association of arson investigators as are several other witnesses for the plaintiff, as well as certain of its counsel. (Doc. 308 at 16). Joint membership in professional organizations obviously does not impact reliability for purposes of *Daubert*.

The defendants do not argue that the samples taken by Deese are not the samples tested by Waters.[12] Instead, they argue that the descriptions Deese used on the evidence transmittal form to identify the area from which each sample came are inconsistent with the descriptions in his report. (Doc. 308 at 16). Waters, however, is offering no opinions on where the samples came from but is simply opining that the samples contained MPD. Whatever the impact of the alleged inconsistency on Deese's credibility, *see* Part A.3, it is irrelevant to the reliability of Waters' opinions.

The defendants do not otherwise attack Waters' qualitative opinions. However, they challenge Waters' ability to reach additional opinions concerning tracking. While the plaintiff is at pains to show that Waters has rendered no quantitative opinion in the sense of assigning a numerical quantity of MPD to the samples, (Doc. 309 at 51-54), by her own admission her opinion that it is "inconceivable" that the MPD in the samples resulted from tracking depends in part on "the high concentration of ignitable liquid detected," (Doc. 241, Exhibit 2) — a statement that necessarily assumes a knowledge of that

---

[12]The description contained in Deese's evidence transmittal form matches the description contained in Waters' report. (Doc. 241, Exhibit 2).

concentration. The plaintiff, however, has failed to show what calculations or other reasoning Waters employed to form her opinion as to the "high concentration" of MPD, much less to show that her methodology is reliable.[13]   Because Waters lacks a reliable basis for this critical predicate of her opinion concerning tracking, that opinion is itself rendered unreliable.

### 4. Conclusion.

The defendants' motion in limine with respect to Laurel Waters is **granted** with respect to her 2004 report and **denied** with respect to her 1998 report.

## F. Mary Rhodes Holt.

Holt has been identified as an expert with respect to her testing of samples from the fire scene. (Doc. 297 at 36).

### 1. Qualifications.

The defendants identify no challenge to Holt's qualifications.

### 2. Relevance.

The defendants purport to question the relevance of Holt's testimony, (Doc. 308 at 17), but her opinions as to the presence of MPD in the samples she tested are patently relevant for purposes of Rule 401 and *Daubert*.

### 3. Reliability.

The defendants argue that the plaintiff cannot prove that the sample she tested which purportedly from Cook actually came from him. (Doc. 308 at 17). Whether the issue is viewed as one

---

[13] Waters referred in her deposition to comparisons of microliters recovered in various samples, (Doc. 309, Exhibit 12 at 99, 104-05), but both she and the plaintiff deny that she used these comparisons in forming her opinions. (*Id.*; Doc. 307, Exhibit A-2 at 143, 148-49; Doc. 309 at 51).

related to reliability under *Daubert* or to authentication generally, the plaintiff plainly has ample evidence that the sample Holt tested is the sample Cook took and sent her. (Doc. 236, Exhibit F).[14]

The defendants next argue that the samples from Hansen that Holt tested were not taken until after Deese's alleged alteration of the scene. (Doc. 308 at 17-18). Since there is no allegation that Deese added MPD to the scene, this timing is irrelevant.

### 4. Unfair prejudice.

The defendants repeat their argument that they are unfairly prejudiced by the plaintiff's utilization of law enforcement witnesses, (Doc. 308 at 18), with similar results.

### 5. Conclusion.

The defendants' motion in limine with respect to Mary Rhodes Holt is **denied**.

## G. Robert Grider.

Grider has been identified as a certified public accountant who is expected to testify as to the financial condition of Foreign Auto Parts. (Doc. 297 at 34-35; Doc. 309 at 61-62).

### 1. Qualifications.

The defendants identify no challenge to Grider's qualifications.

### 2. Relevance.

The defendants purport to question the relevance of Grider's testimony, (Doc. 308 at 17), but his opinions as to the financial condition of the business are patently relevant for purposes of Rule 401

---

[14]Cook's contemporaneous report states that he placed the debris sample in a sealed one-gallon metal can, and the evidence receipt and Holt's report reflect that Holt received such a can from Cook and tested its contents. (*Id*.). The defendants apparently focus on a handwritten note from "L.H." on Holt's report saying she used the wrong case number, but even if she did so, it is the case number that Cook provided her along with the sample. (*Id*.).

and *Daubert*.

### 3. Reliability.

The defendants object that Grider studied Foreign Auto Parts using a fiscal year basis, even though the company employed a calendar year basis, thereby painting an unduly bleak picture of the company's financial health. (Doc. 308 at 18-19). The defendants offer no support for the proposition that an accounting expert is required to utilize the same financial year as the organization under review in order to provide a reliable picture of its financial condition at a given moment.

The defendants also complain that Grider did not take into account that the company's sales increased 50% following the September 1998 re-opening of the road fronting the business. (Doc. 308 at 19). Grider's neglect of this item of information goes at most to his credibility before the jury.

### 4. Conclusion.

The defendants' motion in limine with respect to Robert Grider is **denied**.

DONE and ORDERED this 2nd day of September, 2005.

s/ WILLIAM H. STEELE
UNITED STATES DISTRICT JUDGE