IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **THE CINCINNATI INSURANCE CO.,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | CIVIL ACTION 99-0552-WS-C |
| ) | |
| **MATTHEW LEACH COCHRAN, et al.,** ) | |
| ) | |
| **Defendants.** ) | |

**ORDER**

The Court's review of the pretrial order, (Doc. 297), revealed the presence of several legal issues whose resolution before trial rather than during trial would help to focus this unwieldy case. The Court accordingly ordered briefing on these issues, (Doc. 319), which has now been completed. (Docs. 322, 326, 328).

**I. Legal Viability of the Defendants' Conspiracy Counterclaim.**

The defendants assert causes of action against the plaintiff for breach of the insurance contract and for bad faith refusal to pay a first party claim. They also assert a claim that the defendant conspired with others "to intentionally or recklessly breach the aforementioned contracts of insurance with the Defendants in bad faith." (Doc. 297 at 17, ¶ 5).

The plaintiff presents a creative but unsupported argument in opposition to this claim. It begins with several unobjectionable propositions. First, that conspiracy of its own provides no cause of action; there must have occurred an underlying wrong that was the object of the conspiracy. Second, that the alleged object/underlying wrong in this case was breach of the insurance contract, with or without accompanying bad faith. Third, that only the plaintiff can legally be liable for breach of contract and/or bad faith, because both causes of action require a contractual relation between the parties.

So far, so good, but at this point the plaintiff drifts off track. First, the plaintiff posits that, because it can legally be liable for the substantive wrongs of breach of contract and/or bad faith, it

cannot also legally be liable for conspiring with others for the plaintiff to breach the contract and/or commit bad faith.[1] The conspiracy, it continues, must therefore be a conspiracy for *another co-conspirator* to breach the contract and/or commit bad faith. But because it is legally impossible for another co-conspirator to breach the contract and/or commit bad faith (because they are not in a contractual relation with the insured), the plaintiff concludes that there can be no underlying wrong to support the conspiracy claim. (Doc. 322 at 1-8; Doc. 328 at 1-5).

It can be assumed for present purposes that a conspiracy whose object is to accomplish an unlawful objective by one who is legally incapable of doing so would not support a conspiracy claim. It cannot be assumed, however, that Alabama law precludes a party from being held liable both for its substantive wrong and for conspiracy based on the same conduct (in this case, the plaintiff's alleged breach of contract and/or bad faith). The plaintiff neither cites any authority nor crafts any argument for this critical proposition, and the Court has located no support for it. What the Court has found is a plethora of cases in which a defendant was sued for both a tort and a conspiracy to commit the tort, with no suggestion that the conspiracy claim against the defendant would necessarily fail if the substantive claim succeeded. *See also* Alabama Pattern Jury Instruction 43.02 ("Any defendant who participates in a civil conspiracy is liable for the damages sustained by the plaintiff as a result of the conspiracy ....").

The plaintiff may rely on the Eleventh Circuit's observation that "[t]he allegation of a conspiracy serves merely to expand liability for the underlying wrong to persons who were not directly involved in the wrongful actions." *Nance v. Maxwell Federal Credit Union*, 186 F.3d 1338, 1342 (11th Cir. 1999). It is perfectly true that a conspiracy claim allows a plaintiff to recover from defendants that conspired to commit the substantive wrong but did not themselves commit it, but that truism in no manner supports the proposition that the active co-conspirator — the one that committed the substantive wrong — cannot also be liable for conspiracy.

---

[1] The plaintiff states this as a general proposition applicable regardless of the substantive wrong alleged: "[C]onspiracy does not allow A to sue B for both fraud and conspiracy to commit fraud for B's underlying alleged misrepresentations." (Doc. 322 at 2).

Nor is a conspiracy claim, as to the active co-conspirator, simply redundant with the substantive claim. Rather, "[a] conspiracy may be both pleaded and proved as aggravating the wrong complained of ...." *Scott v. Commonwealth Land Title Insurance Co.*, 518 So. 2d 102, 104 (Ala. 1987).

Based on the argument and authority presented, the Court must conclude that Alabama law does not preclude the defendants from pursuing their conspiracy counterclaim against the plaintiff.

**II.  Cochran as a Counter-Plaintiff.**

As noted, the counterclaims are for breach of contract, bad faith breach of contract, and conspiracy to breach contract and/or commit bad faith. The plaintiff argues that "the existence of a contract between the parties" is a necessary predicate of each of these claims, and Cochran does not argue otherwise.[2] A review of the policies confirms that Cochran is not a party to the contracts.[3] The named insured is defendant Foreign Auto Parts of Mobile, Inc. (Doc. 1, Exhibit A at 1). An endorsement reflects that "Policy No. BPP1708331 [is] Issued to Foreign Auto Parts of Mobile, Inc." (*Id*. at 2). The policy uses "you" and "your" to refer to the named insured, i.e., to Foreign Auto Parts. (*Id*.). *See Billups v. Alabama Farm Bureau Mutual Casualty Insurance Co.*, 352 So. 2d 1097, 1104 (Ala. 1977) (identifying "the parties to the contract" as "the named insured and the insurance company").

Cochran wisely admits that he is not a named insured as to either of the insurance contracts at issue.[4] Moreover, as long ago as May 2002 Cochran filed a "stipulation" for the express purpose of admitting that he "is not individually entitled to recover under either policy for damages incurred by the

---

[2]Cochran argues only that he is in fact a party to the contract. Accordingly, he has waived any argument that he could be a third party beneficiary of the policies and that he could on this basis pursue a claim for breach of contract and/or for bad faith.

[3]As the two policies are substantively identical, only one will be discussed herein.

[4]The pretrial order contains the following agreed fact: "Mr. Cochran is not a named insured on either policy of insurance involved in this suit." (Doc. 297 at 3, ¶ 6).

named insureds under those insurance policies in consequence of the fire that occurred at 713 Holcombe Avenue in Mobile, Alabama on November 13, 1998." (Doc. 36). Cochran filed this stipulation to support his motion to dismiss, which was based on the proposition that "he is not a party to the insurance contracts made subject to the law suit and is not a proper party to these proceedings." (Doc. 35). Cochran then explained that, "[r]ealizing that Cincinnati had sued the wrong parties and that he was not a named insured and thus had no interest in the litigation, Cochran filed a Motion to Dismiss the suit and then filed a stipulation with the Court confirming that he is not individually involved in the alleged dispute over the contracts in question." (Doc. 38, ¶ 6). These statements are "deliberate, clear, and unequivocal" and thus constitute binding judicial admissions. *Reynolds v. Roberts*, 202 F.3d 1303, 1318 n.24 (11th Cir. 2000)(internal quotes omitted).

Cochran nevertheless points to two provisions of the policy which, he says, create an ambiguity as to whether he is a party to the contract, which ambiguity must be resolved by the jury. The first provision states that "Your executive officers and directors are insureds, but only with respect to their duties as your officers or directors." (Doc. 1, Exhibit A at 31). This language may offer Cochran some protection were he to be injured or sued for damages in connection with conduct undertaken as president of Foreign Auto Parts, but he has offered no explanation how this language could make him a party to the contract. The other provision prohibits the named insured from transferring its rights and duties "except in the case of death of an individual Named Insured." (*Id*. at 39). There is, of course, no named insured under the policy but Foreign Auto Parts. The policy provisions do not introduce any ambiguity as to whether Cochran is a party to the contracts. Nor, given Cochran's binding judicial admissions that he is *not* a party to the contracts, would any ambiguity rescue his claim.

Cochran complains that the plaintiff has "treated him as the insured," has "sued him as the insured," has "referred to him as the insured," and has "pled or stipulated that [he] is the insured." By this conduct, Cochran argues, the plaintiff has "admitted that [he] is the insured" and has "represent[ed] to this Court that [he] should be treated as an insured under the policies." (Doc. 326 at 8, 10).

Cochran's evidence of this alleged duplicity is rather slim. He quotes at length the original complaint, filed over six years ago, which named Cochran as the only defendant and as the insured.

(Doc. 1). This filing was of course followed by Cochran's unequivocal stipulation that he is *not* entitled to any recovery under the policies, (Doc. 36), and it is difficult to understand how Cochran's deliberate and unequivocal stipulation could fail to supersede any contrary statement by the plaintiff. Otherwise, Cochran points only to the plaintiff's efforts to attribute Cochran's alleged arson to the named insureds, (Doc. 326 at 9), conduct that fails to suggest that the plaintiff considered Cochran to be a party to the contract.

Based on the argument and authority presented, the Court must conclude that Cochran is not a proper counter-plaintiff and that he cannot maintain any alleged counterclaim against the plaintiff.

**III.  Punitive Damages Caps.**

With exceptions not relevant here, Alabama law presently caps punitive damages "in all civil actions." Ala. Code § 6-11-21. Section 4 of the act provides that "[t]his act shall apply to all actions commenced more than 60 days after the effective date of this act." The effective date was June 7, 1999. *Birmingham News Co. v. Horn*, 901 So. 2d 27, 68 (Ala. 2004). Accordingly, Section 6-11-21 applies to actions commenced on or after August 7, 1999.

The complaint was filed June 14, 1999, while the first counterclaim was filed November 30, 1999. (Docs. 1, 17). The plaintiff's tortured argument is that an "action" is "commenced" for purposes of Section 6-11-21 only when a pleading is filed that seeks punitive damages. Because the complaint did not seek punitive damages, and because the first counterclaim seeking them was filed after August 6, 1999, the plaintiff concludes that the caps of Section 6-11-21 apply herein. (Doc. 322 at 17-22; Doc. 328 at 7-10). As the plaintiff recognizes, to prevail on this argument it must show that "a counterclaim is a 'civil action.'" (Doc. 328 at 8).

The plaintiff begins by noting that "[t]here shall be one form of action to be known as 'civil action.'" Ala. R. Civ. P. 2. By this, the plaintiff acknowledges that a "civil action" for purposes of Section 6-11-21 is no different than a "civil action" for purposes of the rules of civil procedure. Those rules plainly provide that "[a] civil action is commenced by filing a complaint with the court." Ala. R. Civ. P. 3(a). Accordingly, this civil action was commenced for purposes of Section 6-11-21 upon the

plaintiff's filing of the complaint in June 1999.[5]

Based on the argument and authority presented, the Court must conclude that the punitive damages caps of Section 6-11-21 do not apply to the defendants' counterclaims.

## IV.  Normal Bad Faith.

The defendants plainly alleged a claim for normal bad faith, (Doc. 87 at 14-15), and Judge Hand's order on motion for summary judgment did not clearly eliminate it. (Doc. 116 at 15-17).  The plaintiff admits as much, arguing that Judge Hand "*would have* granted summary judgment as to a normal bad faith claim." (Doc. 322 at 29 (emphasis added)).  Based on the argument and authority presented, the Court must conclude that a claim for normal bad faith remains in the lawsuit.

The plaintiff devotes most of its argument to the proposition that the defendants' claim for abnormal bad faith as pleaded and/or as understood by Judge Hand is more limited than the version set forth in the final pretrial order.  The plaintiff objects to any effort to expand the scope of the claim through the pretrial order.  (Doc. 322 at 22-29; Doc. 328 at 10-11).  The Court did not request briefing on this issue, and it will not be considered at this time.  However, the Court notes that Federal Rule of Civil Procedure 8(a) requires that the complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  To satisfy the rule, the complaint must put the defendant "on notice as to the claim being asserted against him and the grounds on which it rests." *Hamilton v. Allen-Bradley Co.*, 244 F.3d 819, 823 (11th Cir. 2001) (internal quotes omitted).  To the extent, if any, that the counterclaim as amended did not satisfy this test, the defendants cannot rectify the omission through the vehicle of the pretrial order.  *Coon v. Georgia Pacific Corp.*, 829 F.2d 1563, 1568 (11th Cir. 1987) ("[T]he inclusion of claims in the pretrial stipulation, the mention of them in discovery and the filing of motions concerning those claims were not a substitute for the factual allegations of a complaint under Federal Rule of Civil Procedure 8(a).").

---

[5]The plaintiff's resort to Black's Law Dictionary cannot change this result, both because it depends on a misreading of that source and because it could not trump Alabama law in any event.

DONE and ORDERED this 18th day of October, 2005.

                                                        s/ WILLIAM H. STEELE
                                                       UNITED STATES DISTRICT JUDGE