**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | |
|---|---|
| THE CINCINNATI INSURANCE CO., | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )    **CIVIL ACTION 99-0552-WS-C** |
| | ) |
| MATTHEW LEACH COCHRAN, et al., | ) |
| | ) |
|     Defendants. | ) |

**ORDER**

This matter is before the Court on the defendants' motion for new trial. (Doc. 358). The plaintiff has filed a response, (Doc. 361), and the motion is ripe for resolution. After carefully considering the foregoing materials, as well as other relevant materials in the file, the Court concludes that the motion is due to be denied.

**I. Timeliness.**

"Any motion for a new trial shall be filed no later than 10 days after entry of the judgment." Fed. R. Civ. P. 59(b). "The ten day period for serving new trial motions is jurisdictional and cannot be extended in the discretion of the district court." *Pate v. Seaboard Railroad, Inc.*, 814 F.2d 1074, 1084 (11th Cir. 1987); *accord* Fed. R. Civ. P. 6(b) (a court "may not extend the time for taking any action under Rul[e] ... 59(b)").[1]

Judgment was entered on November 17, 2005. (Doc. 355). *See generally* Fed. R. Civ. P. 58(b) (defining when judgment is entered). The defendants' motion for new trial was filed on December 5, 2005, some 18 days later. Because the time allowed by Rule 59(b) is less than eleven days, intervening Saturdays, Sundays and "legal holidays" are excluded. Fed. R. Civ. P. 6(a). November 19, 20, 26 and 27, as well as December 3 and 4, 2005, were Saturdays and

---

[1]Because the timeliness of the motion is jurisdictional, the Court considers the issue despite the parties' failure to acknowledge or address it. *E.g., Fox v. City University*, 1999 WL 97922 at *2 9S.D.N.Y. 1999); *cf. Berglee v. First National Bank*, 1997 WL 34423 at **1 (8th Cir. 1997)(raising sua sponte the issue of its appellate jurisdiction, based on the untimely filing of a motion for new trial); *Knop v. McMahan*, 872 F.2d 1132, 1139 (3rd Cir. 1989)(same).

Sundays.  Moreover, November 24 was Thanksgiving Day, which Rule 6(a) expressly recognizes as a legal holiday.  Excluding these days in accordance with Rule 6(a), the defendants' motion for new trial was filed eleven days after entry of judgment.

November 25, 2005 was the day after Thanksgiving, a day that Rule 6(a) does not recognize as a legal holiday.  However, Rule 6(a) provides that a legal holiday also includes "any other day appointed as a holiday by the President or the Congress of the United States, or by the state in which the district court is held."  The Court thus reviews these potential sources of legal holidays.

Congress has enacted a formal list of legal holidays, and it does not include the day after Thanksgiving.  5 U.S.C. § 6103(a).  It is possible for a legal holiday for purposes of Rule 6(a) to be established by executive order, even if the order does not use the term "legal holiday."[2] However, the sole presidential pronouncement concerning Thanksgiving 2005 that this Court has been able to locate comes in the form of a proclamation rather than an executive order, and it addresses only "Thanksgiving Day," proclaiming "Thursday, November 24, 2005, as a National Day of Thanksgiving."  Proclamation No. 7963, 70 Fed. Reg. 70,985 (November 18, 2005).[3]

Like Congress, the Alabama Legislature has enacted a list of legal holidays, and the day after Thanksgiving is not included.  Ala. Code § 1-3-8.  Nor is it so listed in Alabama's version of Rule 6(a).  Ala. R. Civ. P. 6(a).  There are indications that the day after Thanksgiving has

---

[2]*See Hart v. Sheahan*, 396 F.3d 887, 889-91 (11th Cir. 2005)(December 26, 2003); *United States v. Johnson*, 582 F.2d 335, 336 (5th Cir. 1978)(December 26, 1977); *Darby v. Potter*, 2005 WL 840466 at *2 (E.D. La. 2005)(day of mourning for President Reagan); *Tusino v. International Brotherhood of Teamsters*, 2004 WL 2827643 at *1 n.1 (S.D.N.Y. 2004)(same).

[3]Because Rule 6(a) limits the sources of a federal legal holiday to Congress and the President, the mere fact that the federal courthouse was closed on the day after Thanksgiving cannot transform that day into a "legal holiday."  *Garcia-Velazquez v. Frito Lay Snacks Caribbean*, 358 F.3d 6, 9 (1st Cir. 2004); *accord Hart v. Sheahan*, 396 F.3d at 890.  Likewise, while a federal courthouse closed on administrative order may render the courthouse "inaccessible" for purposes of Rule 6(a), *Keyser v. Sacramento City Unified School District*, 265 F.3d 741, 747 (9th Cir. 2001), such days are excluded from computation only when they represent the "last day of the period."  Fed. R. Civ. P. 6(a).  Because the day after Thanksgiving was not the last day for filing a motion for new trial, it cannot be excluded on this basis.

sometimes been considered a state holiday,[4] but there is no evidence before the Court that November 25, 2005 was established as a state holiday. *Cf. Bloomquist v. Albee*, 2004 WL 3017046 at *2 (D. Me. 2004)("Plaintiff's bare assertion without any supporting documentation does not support a conclusion that this Friday [after Thanksgiving] was a 'legal holiday'" under Maine law).

The defendants bear the burden of demonstrating that their motion was timely filed. *See Sadowski v. Bombardier Ltd.*, 527 F.2d 1132, 1134 n.4 (7th Cir. 1975)(approving trial court's placement of the burden on the movant to "establish on the record" that its motion for new trial was timely). They have not done so. Accordingly, the Court concludes that it lacks jurisdiction to consider the motion.

## II. Merits.

Even if the defendants had timely filed their motion, they are not entitled to relief on the merits.

### A. Emanuel Cook.

The defendants complain that, after listing Cook as a trial witness, the plaintiff did not call him and represented that he was in Texas. Larry Hansen then related to the jury conversations he had with Cook concerning the fire and its investigation. After the trial, the defendants contacted Cook and were told he had not been to Texas and that he had information potentially helpful to their case. The defendants conclude that the plaintiff "misrepresented Mr. Cook's actions and opinions in this matter to the Court and the jury and intentionally did not call Mr. Cook as a witness in the hopes of avoiding the information being disclosed." (Doc. 358 at 3-4, ¶ 13).

The defendants' grievance is difficult to grasp. They have known of Cook's involvement

---

[4]*See Moragne v. Moragne*, 888 So. 2d 1280, 1282 n.2 (Ala. Civ. App. 2004)(November 29, 2002 was a state holiday pursuant to gubernatorial designation); *Blackwell v. Williams*, 594 So. 2d 56, 57 (Ala. 1992)(November 23, 1990 was a legal holiday, source unidentified); *Perry v. State*, 741 So. 2d 467, 468 (Ala. Crim. App. 1999)(November 28, 1997 was a state holiday, source unidentified).

in the investigation of the fire for years, and their apparent failure to interview him until after trial — and their consequent assumption that he was unhelpful to their case — can scarcely be laid at the feet of the plaintiff.  Likewise, the defendants — who reserved the right to call any witness listed by the plaintiff, (Doc. 297 at 40) — had every right to call Cook as a witness but elected not to do so.  Whether or not Cook was in Texas during the trial, the plaintiff did not procure his absence from the district[5] and, given the defendants' disinterest in calling him until after trial, it would not matter if the plaintiff had done so.[6]

### B.  Larry Hansen.

The defendants note that Hansen is a member of an arson investigation group to which plaintiff's counsel and experts also belong, and they argue that he improperly deferred to the plaintiff's electrical expert.  (Doc. 358 at 4, 5-6, ¶¶ 14, 18-22).  These contentions were fully explored before — and evidently discounted by — the jury.  They furnish no ground for ordering a new trial.

### C.  Jim Posey.

Jim Posey died before trial, and the defendants elected not to present his testimony by deposition.  They nevertheless argue that plaintiff's counsel has been engaged in a campaign to discredit Posey, both within and outside this litigation.  (Doc. 358 at 4-5, ¶¶ 15-17).  The defendants do not even attempt to explain the relevance of this material to a motion for new trial. It patently does not constitute new evidence, since the defendants raised similar arguments prior

---

[5]The plaintiff has produced an affidavit reflecting that it issued a trial subpoena for Cook but that his mother advised the process server that Cook could not be contacted and might be in Texas.  (Doc. 361, Exhibits 3, 7).  The defendants have produced an affidavit from Cook, who denies being in Texas but neither denies being unavailable for trial nor accuses the plaintiff of any connection to his unavailability.  (Doc. 358, Exhibit 1).

[6]To the extent the defendants suggest that Cook has provided them with newly discovered evidence, they have not shown that they could not have obtained the evidence before trial or that it would probably affect the outcome of trial.  *See generally Toole v. Baxter Healthcare Corp.*, 235 F.3d 1307, 1316 (11th Cir. 2000)(listing the elements for obtaining a new trial based on new evidence under Rule 60(b)(2)).

to trial.

### D.  Owen Posey.

A major theme of the defendants at trial was that Harold Deese removed certain electrical materials before Posey (the plaintiff's electrical expert) arrived on the scene, thereby compromising the validity of his opinion that the fire was not of electrical origin.  The defendants proffer a handwritten note, purportedly that of an assistant district attorney concerning an interview with Posey, which includes the remark, "Does not have all physical evidence - All he has are photos."  (Doc. 358, Exhibit 4).  The defendants trumpet this note as proving that Deese removed electrical materials, (Doc. 358 at 7-8, ¶¶ 23-25), but it does not constitute new evidence.  On the contrary, the defendants identified the note as "potential impeachment/rebuttal evidence" some eleven days before trial, (Doc. 361, Exhibit 4, ¶ 2), and their decision to forego available evidence is not the stuff of which new trials are made.[7]

### E.  Claim File.

The plaintiff offered its voluminous claim file in evidence.  The defendants argue that the version of the file that went to the jury as one mammoth exhibit of several thousand pages included certain documents that should have been redacted.  (Doc. 358 at 8-14).

### 1.  Litigation letters.

A letter from plaintiff's previous counsel to Larry Hansen, dated May 13, 2002, states that "Judge Hand granted Cincinnati's Motion for Summary Judgment."  (Doc. 358, Exhibit 5).  A letter from the same lawyer to counsel for the defendants' sellers, dated October 9, 2002, states that defense counsel "basically informed the mediator that if the [sellers] resolved their state court case, [the defendants] would go away."  (*Id*., Exhibit 6).  The defendants complain that the first letter would suggest to the jury that a federal judge had already concluded their

---

[7]Nor does the note suggest that Deese removed electrical material from the scene before Posey arrived.  All it shows is that, as of the July 12, 1999 conversation — some eight months after Posey's investigation — the material was not in Posey's possession.

claims had no merit, while the second would suggest that they were suing only to obtain money with which to satisfy their creditors.

The threshold problem with the defendants' argument is that they allowed the letters to be admitted into evidence without objection. Their general pretrial objections of irrelevance and hearsay, (Doc. 302 at 2, ¶ 5), were not specifically directed to the letters and at any rate merely preserved the defendants' ability to make such objections at trial. While they objected at trial to certain portions of the claim file, they raised no objection to the letters, which were thus admitted without objection as part of the claim file.[8]

The defendants plainly were on notice that the letters were part of the claim file. The letters carry Bates stamp numbers 02900 and 04369, and more than a year before trial the plaintiff identified the claim file as including all documents with Bates stamp numbers 00001 through 04487. (Doc. 361, Exhibit 6 at 3, ¶ 2). It is unclear whether the defendants ever consciously realized that the letters were part of the claim file, but any ignorance on their part was of their own doing. The plaintiff produced the letters contemporaneously with its identification of them as part of the claim file in August 2004. (Doc. 361, Exhibit 5 at 3, ¶ 2). Moreover, the parties were under Court order to "furnish opposing counsel, for copying and inspection, all exhibits on the revised [exhibit] lists" before trial, (Doc. 302 at 2, ¶ 5), a procedure that guaranteed the defendants the opportunity to review the claim file exhibit in toto.[9]

The defendants offer no challenge to any of the foregoing points. Instead, they argue that they were relieved of their twin obligations to confirm the content of the exhibit and to object to the letters within it because statements of the Court and the plaintiff led them to believe that only documents created before the denial of their claim would be included in the trial exhibit. (Doc. 358 at 8-9, ¶¶ 26-27; *id.* at 11, ¶ 35).

The defendants first invoke unidentified "Court Orders and instructions" as the source of their understanding. (Doc. 358 at 8, ¶ 26). As the record plainly reflects, the Court never ruled,

---

[8]The only objection the defendants now raise to the letters is that they constitute offers of compromise and/or confidential mediation documents excludable under Federal Rule of Evidence 408 and/or Eleventh Circuit mediation rules. (Doc. 358 at 11-12, ¶¶ 36-38).

[9]This instruction was repeated in the final pretrial order. (Doc. 335 at 2, ¶ D.2.a).

and was not asked to rule, that post-denial documents must be excluded from the exhibit.[10]  The defendants then assert that, at the final pretrial conference, "the Court made clear that these documents [attorney correspondence and post-litigation documents] are not normally admissible." (Doc. 358 at 11, ¶ 35).  In fact, the Court merely directed the defendants to remove from their exhibit list the many  pleadings and pieces of attorney correspondence that they had included, (Doc. 321, Exhibit 1), because counsel conceded he did not intend to introduce them into evidence but only to refer to them in oral arguments before the Court.  (Doc. 335 at 2, ¶ D.2.a).  The Court did not remotely rule that attorney letters and post-denial material are "not normally admissible."  Even had it done so, the Court was faced with, and addressed, only the plaintiff's objection to the defendants' exhibits, not vice versa.  It remained incumbent upon the defendants to object to the plaintiff's exhibit on such grounds.

The defendants identify no statement that could be construed as an assurance by plaintiff's counsel that it had or would voluntarily redact any or all post-denial material from the claim file before introducing it into evidence.  Their vague, unamplified reference to "conversations between counsels [sic]," (Doc. 358 at 8, ¶ 26), made in a brief rather than an affidavit from counsel, is patently insufficient to support the conclusion that any such assurance was made.

In short, the defendants were on notice that the claim file contained the two letters, and they failed without excuse to object to their inclusion in the exhibit introduced into evidence.  They cannot obtain a new trial based on their own error.

### 2. Interview transcripts.

The claim file also included transcripts of witness interviews.  The defendants objected at trial to the admission of these transcripts, and the Court overruled the objection.  The defendants challenge this ruling.  (Doc. 358 at 13-14, ¶¶ 42-45).  The Court stands by that ruling for the

---

[10]The Court did articulate at the final pretrial conference its expectation that all references to the criminal investigation and prosecution of the defendant Matthew Cochran would be redacted, consistent with Judge Butler's order granting the defendants' motion in limine to exclude all such references. (Doc. 274).  The two letters, however, do not implicate the criminal aspects of the case.

reasons expressed at trial.

### 3. Fischetti reports.

The defendants complain that certain reports were introduced as part of the claim file without the plaintiff calling the author as a witness. (Doc. 358 at 14, ¶¶ 45-46). It does not appear that the defendants objected to these documents before the claim file was admitted. Moreover, the only authentication objection the defendants preserved the right to make at trial concerned authentication of the claim file itself, not authentication of the Fischetti reports. (Doc. 342 at 6-9). To the extent the defendants argue that the reports contain "hearsay, [Fischetti's] perceptions, his conversations and his opinions regarding the claim," (Doc. 358 at 14, ¶ 46), they were offered to prove that the plaintiff conducted a thorough investigation and that it possessed a debatable reason to deny the defendants' claim, not to prove the truth of the matters asserted therein.

Even had the defendants shown that any or all of the foregoing evidence was improperly admitted, the erroneous admission of evidence can support a motion for new trial only where it results in "substantial prejudice." *Peat, Inc. v. Vanguard Research, Inc*., 378 F.3d 1154, 1162 (11th Cir. 2004). Factors in making this determination include: (1) the number of evidentiary errors; (2) the closeness of the factual disputes on the issues affected by the error; (3) the prejudicial effect of the evidence; (4) whether opposing counsel intentionally elicited the evidence; (5) whether opposing counsel focused on the evidence at trial; and (6) the giving of any cautionary or limiting instruction. *Id*.

If all the challenged evidence was improperly admitted, it would amount to several evidentiary errors. The introduction of the documents was presumably intentional on the part of plaintiff's counsel, but the defendants do not assert that opposing counsel focused on any of them before the jury. No restrictive instructions were given, but none were sought.

The critical factor in this case is the overwhelming evidence that defendant Cochran set the fire that damaged his businesses. The Court will not regurgitate details by now long familiar, but suffice it to say that an army of lay and law enforcement witnesses laid bare Cochran's motive to commit arson, his intention and planning to do so, and his conduct — starkly

inconsistent with innocence — on the night of November 11, 1998.  Cochran did not aid his cause by offering flimsy explanations and bald denials of the wealth of evidence against him, nor by claiming to have witnessed a sudden burst of flame that even his own expert could not accept. His effort to turn the case into a battle of experts foundered on its own inherent implausibilities and could not in any event erase the mountain of damning evidence presented by disinterested witnesses.  As in *Alexander v. Fulton County*, 207 F.3d 1303 (11th Cir. 2000), the jury's verdict was "the product of such one-sided evidence that we find it very unlikely, indeed remote, that the jury could have been swayed erroneously by the wrongfully admitted evidence."  *Id*. at 1330.

The defendants insist that, based on the post-deliberation appearance of the trial exhibits as "out of sequential order and shuffled together," the jury "most certainly reviewed the claims file," including the challenged papers.  (Doc. 358 at 12, ¶ 39).  Assuming for purposes of argument that the shuffling of paper suffices to show that the jury reviewed the claim file, it does not show that the jury reviewed the challenged documents — a tiny fraction of the 4,000 pages contained in the claim file — in the less than three hours they deliberated.  At any rate, and as discussed above, the evidence of arson was so overwhelming that the challenged documents, even if reviewed, cannot reasonably be said to have influenced the jury's verdict.

### F.  New Trial as a Sanction.

Finally, the defendants urge the Court to grant a new trial to sanction the plaintiff because it "knew of Emanuel Cook's availability for trial, as well as what his testimony would consist of" and because it "intentionally placed clearly inadmissible and damaging documents" in the claim file exhibit.  (Doc. 358 at 13, ¶ 41).  As discussed in Parts A and E, the defendants have failed to show that the plaintiff or its counsel did anything improper in these regards.  At any rate, "[t]he standard for determining whether a jury verdict should be set aside as a result of misconduct of counsel is whether the conduct was such as to impair gravely the calm and dispassionate consideration of the case by the jury."  *BankAtlantic v. Blythe Eastman Paine Webber, Inc*., 955 F.2d 1467, 1474 (11th Cir. 1992)(internal quotes omitted).  For the reasons set forth in Part E, the defendants have not met this standard.

### CONCLUSION

For the reason set forth above, the defendants' motion for new trial is **denied**.


DONE and ORDERED this 25th day of January, 2006.


s/ WILLIAM H. STEELE
UNITED STATES DISTRICT JUDGE